UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MANUEL CARVALHO CALVELOS,

                            Plaintiff,

          -against-                                    Case No. 1:19-cv-06629-CM

CITY OF NEW YORK, et al.,

                            Defendants.
----------------------------------------------------------------------X

## **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**

HELD & HINES, LLP
*Attorneys for Plaintiff*
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STANDARD OF REVIEW ..................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

I.  The Court should strike or disregard all extraneous materials included in Defendants' motion to dismiss. ....................................................................................................................... 4

II.  The Court should not stay discovery. ..................................................................................... 4

III.  Plaintiff's Title VII claims are timely. ................................................................................... 5

IV.  Plaintiff has sufficiently plead his discrimination-based claims. ........................................... 6

a.  Claims based on Title VII. ...................................................................................................... 6

i.  Plaintiff is a member of a protected class. ............................................................................. 7

ii.  Plaintiff was qualified for the position he held. ..................................................................... 9

iii.  Plaintiff was subject to adverse employment action. ........................................................... 10

iv.  Plaintiff's Complaint pleads an inference of discrimination. ................................................ 11

b.  Claims based on 42 U.S.C. § 1981, N.Y.C. Admin. Code § 8-107, and N.Y. Exec. Law § 290. 12

c.  Plaintiff has stated claims for municipal and individual liability under 42 U.S.C. § 1983 .... 13

V.  Plaintiff has sufficiently plead his retaliation-based claims. ................................................ 15

a.  Retaliation under 42 U.S.C. § 1981 and Title VII. ................................................................ 15

b.  Retaliation under the First Amendment. ............................................................................... 18

VI.  Plaintiff has sufficiently plead his other claims .................................................................... 21

CONCLUSION ....................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. City of N.Y.*, 957 F. Supp. 2d 239 (E.D.N.Y. 2013) ...........................................21, 22
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................................2
*Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289 (S.D.N.Y. 2009) ...............................12, 13
*Barella v. Village of Freeport*, 16 F. Supp. 3d 144 (E.D.N.Y. 2014) .............................................8
*Brandon v. City of New York*, 705 F. Supp. 2d 26 (S.D.N.Y. 2010). ...........................................13
*Butts v. New York Dep't of Housing Pres. & Dev.*, 990 F.2d 1397 (2d Cir. 1993) .......................5
*Connick v. Myers*, 461 U.S. 138 (1983)..............................................................................................20
*Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994).............................................................................6
*Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267 (2d Cir. 2011)....................................19
*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010).) ...................................................4
*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ...............................................................................19, 20
*Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010)). .....................................................................15, 16
*Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013)..................................................................................3
*Holcomb v. Iona College*, 521 F.3d 130 (2d Cir. 2008) ...........................................................7, 11
*In re. Calvelos v. Brann, et al.*, Index No. 154110/2018 (Sup. Ct. N.Y. Cnty.)..........................4, 5
*Jana-Rock Constr. Inc. v. New York State Dep't of Econ. Dev.*, 438 F.3d 195 (2d Cir. 2006) ......8
*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015)...........................................2, 3, 8
*Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590 (2d Cir.
    1988))..............................................................................................................................................16
*Matthews v. City of New York*, 488 F App'x 532 (2d Cir. 2012) ...............................................19
*Matthews v. City of New York*, 779 F.3d 167 (2d Cir. 2015)......................................................20
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .................................................. *passim*
*Monell v. Dep't of Social Services*, 436 U.S. 658 (1978)...........................................................13, 14
*Reuland v. Hynes*, 460 F.3d 409 (2d Cir. 2006) ...............................................................................20
*Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987)..........................................................................13
*St. Louis v. Praprotnik*, 485 U.S. 112 (1988). ................................................................................13
*Village of Freeport v. Barrella*, 814 F.3d 594 (2d Cir. 2016). .......................................................8
*Weintraub v. Board of Education*, 593 F.3d 196 (2d Cir. 2010) ...........................................19, 20

**Statutes**

Local Rule 6.4.........................................................................................................................................2
Fed. R. Civ. P. 6(a) ...............................................................................................................................2
Fed. R. Civ. P. 12(b) ................................................................................................................... *passim*
42 U.S.C. § 1981 .......................................................................................................................... *passim*
42 U.S.C. § 1983.......................................................................................................................... *passim*
Title VII of the Civil Rights Act of 1964 ("Title VII") ............................................................ *passim*
First Amendment to the U.S. Constitution ..........................................................................  *passim*

## PRELIMINARY STATEMENT

There are four facts upon which Plaintiff's claims are based: (1) Plaintiff uncovered rampant corruption during his tenure as a corrections officers ("CO") at Rikers Island and Defendants retaliated against Plaintiff because he refused to be complicit in such unlawful conduct; (2) Defendants discriminated against Plaintiff on account of his race and ethnicity by targeting him for dangerous and unsafe assignments, condoning or outright authorizing violence against him by inmates, and holding him and him alone to an arbitrary system of discipline; (3) Defendants terminated Plaintiff from his employment with the New York City Department of Correction ("DOC") on January 5, 2018; and (4) Defendants' stated reasons for termination were illegitimate, pretextual, and have been conclusively disproven as possible reasons for termination. The Complaint substantiates these facts in vivid and disturbing detail, citing dates and times of illustrative incidents, the staff and rank involved, the resolution of such incidents, and the undeniable causal link between these incidents and Plaintiff's termination. That Plaintiff has properly plead his claims is a certainty; that Plaintiff will ultimately prove his claims is not only plausible, but highly probable.

Defendants cannot (or chose not) to dispute or even explain these allegations. Over the course of 30 pages of argument, most of which confirm the factual predicate of Plaintiff's claims, Defendants make the same conclusory argument time and time again—that each shocking individual incident should be looked at in isolation, and thus, is devoid of explicit discrimination or retaliation. Defendants miss the forest for the trees at their own peril. It is the culmination of each disturbing incident that illuminates an unequivocal picture of wrongdoing, corruption, retaliation, and discrimination.

As is clear in the Complaint, and as will be explained in this memorandum of law, the only question is whether Defendants' conduct—most of which is uncontroverted and unexplained by Defendants in their motion to dismiss—fits any cognizable theory of recovery. It does.

Because the date requested by Plaintiff in his letter motion for an extension of time to file his Opposition, and granted by the Court (dkt. 53)—October 14, 2019—is a federal holiday—Plaintiff files his Opposition on the next business day—October 15, 2019—pursuant to Fed. R. Civ. P. 6(a) and Local Rule 6.4.

## STATEMENT OF FACTS

In the interest of judicial economy, Plaintiff incorporates by reference his Complaint as the most accurate and comprehensive recitation of the allegations in this case. To the extent that specific examples of Plaintiff's allegations are needed, they are addressed accordingly.

## STANDARD OF REVIEW

Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defendants do not make a single argument in support of their Rule 12(b)(1) defense. Defendants cite Rule 12(b)(1) once, and never discuss or cite the phrase "subject matter jurisdiction." Accordingly, this argument is unsupported and needs no rebuttal. Defendants' entire argument is based on Rule 12(b)(6).

The standard of review on a motion to dismiss is well-settled: the complaint as a whole is liberally construed, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). A complaint need only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, a court's role is "merely to assess the legal feasibility of the complaint, not to

2

assay the weight of the evidence which might be offered in support thereof." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (internal quotations and citations omitted). Where the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is utilized, such as in claims arising under Title VII, 42 U.S.C. § 1981, 1983, the standard is even more liberal: the factual allegations "need only give plausible support to *a minimal inference of discriminatory motivation*." *Littlejohn*, 795 F.3d at 311 (emphasis added).

## ARGUMENT

Every one of Plaintiff's claims requires an adverse employment action. It is undisputed that Defendants' termination of Plaintiff is an adverse employment action. Accordingly, this element is satisfied in every one of Plaintiff's claims. Defendants attempt to bury this fact beneath pages of arguments calling for the court to "dismiss" Plaintiff's allegations of the myriad unlawful instances of discrimination and retaliation that led up to the termination. Defendants' request is improper because on cannot "dismiss" allegations. Defendants' request is misguided because while these instances might constitute instances of discrimination and retaliation on their own, they are evidence of the discrimination and retaliation underlying the primary adverse employment action in this case—Plaintiff's termination. Ironically, Defendants spend nearly their entire brief discussing these individual incidents and claiming that there is no evidence of discrimination or retaliation. These incidents *are* the evidence of discrimination and retaliation. Defendants cannot and do not prove otherwise.

The Complaint states eight different counts, which fall generally into (a) discrimination-based claims, and (b) retaliation-based claims. Each set of claims is analyzed separately.

I.     **The Court should strike or disregard all extraneous materials included in Defendants' motion to dismiss.**

A court may not consider documents extraneous to the complaint unless the documents are "integral to the complaint" and conclusively and indisputably authentic and accurate. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Defendants' motion to dismiss included the complaint and eight additional exhibits that were not included in Plaintiff's complaint, and have not been established as authentic and accurate (dkt. 49-1-9). Because the focus on a motion to dismiss is the face of the complaint, and these documents have not been exchanged as part of any early discovery, they are improper at this stage, and should be disregarded by the Court or stricken from the record. Should Defendants move for summary judgment, the parties must be given an opportunity to conduct discovery.

II.    **The Court should not stay discovery.**

Defendants' "Point I" is premature and a mere recitation of their arguments in support of their motion to dismiss. Defs.' Memo. of Law in Supp. of Mot. to Dismiss (dkt. 49) (hereafter "Defs.' Memo.") at p. 11. The Complaint is replete with disturbing instances of widespread corruption and retaliation against Plaintiff by and amongst the various Defendants. Further, Defendants cannot make any claim about the breadth of discovery because none has been served or exchanged. Most importantly, Defendants reliance on Plaintiff's contemporaneous Article 78 proceeding in New York State Supreme Court as a reason not to permit discovery to move forward is insincere. *See In re. Calvelos v. Brann, et al.*, Index No. 154110/2018 (Sup. Ct. N.Y. Cnty.). Defendants fail to mention that this proceeding has already survived a motion to dismiss, with Justice Jaffe holding, *inter alia*, that "there remain issues of fact as to whether [Plaintiff] was fired in bad faith"; that "Respondents therefore fail to show that [Plaintiff] does not state a claim for

unlawful termination of his probationary employment"; and that "even if [Plaintiff] was guilty of using unlawful force, respondents submit no evidence establishing that they did not have a retaliatory motive in terminating his employment." This unreported decision, available on the N.Y. Courts public website, confirms that Plaintiff's causes of action are very likely to succeed, and thus, discovery should not be stayed.

### III.   Plaintiff's Title VII claims are timely.

Defendants' argument in support of Point II (*see* Defs.' Memo. at p. 12) is as short as it is short-sighted. The primary, material adverse employment action at issue in this case is Defendants' unlawful termination of Plaintiff on January 5, 2018. This is undisputed. The fact that this termination was the culmination of a years-long pattern of intimidation, harassment, discrimination, and retaliation that lasted more than 300 days does not remove the oldest instances of unlawful conduct from the Court's jurisdiction. Such an interpretation is nonsensical and was rejected by the court in *Butts v. New York Dep't of Housing Preservation & Development*, 990 F.2d 1397 (2d Cir. 1993).

As the court explained in *Butts*, the primary purpose of the EEOC charge is to alert the EEOC to the discrimination a Plaintiff is suffering. The Complaint demonstrates that the discrimination against the Plaintiff grew in scope, regularity and brazenness as time drew on, culminating in the most egregious act of Plaintiff's termination. Though Plaintiff was discriminated against from the beginning, EEOC involvement and this current litigation would have been very unlikely had Plaintiff not been terminated. Accordingly, to draw a line splitting the different predicate acts underlying Plaintiff's termination by an arbitrary date when all incidents are inherently and reasonably related and *support* a showing of discrimination would fly in the face of the purpose of the EEOC charge and the *Butts* exceptions.

This reasoning is consistent with the well-settled continuous violation rule, which states: "[w]here a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). As the court found in *Cornwell*, a plaintiff properly brought a discrimination and harassment claim in 1986 because "the discrimination and harassment suffered by Cornwell was a continuing violation that began in 1981 and did not end until she finally left MacCormick in 1986." *Id.*

Plaintiff's Title VII claims are all timely. Even if the Court bars specific instances of discrimination that occurred prior to August 15, 2017, these instances still support, and provide evidence of, the primary, timely, unlawful adverse employment action in this case—the January 5, 2018 termination.

**IV.    Plaintiff has sufficiently plead his discrimination-based claims.**

It is unequivocal that Defendants took adverse employment action against Plaintiff on January 5, 2018.  The Complaint further alleges numerous incidents of unlawful conduct that Defendants took against Plaintiff that lead up to the January 5, 2018 termination, which as a whole, form the basis of Plaintiff's claims. Defendants' attempt to isolate and explain away each individual incident from the disturbing whole is a red herring. Time and time again, Plaintiff was forced into dangerous and violent situations on account of his race and ethnicity. Warden Glenn explicitly attacked Plaintiff on account of his race and ethnicity just prior to his termination. Compl. ¶ 125-29. Plaintiff's discrimination-based claims survive.

**a.    Claims based on Title VII.**

Defendants recognize that Plaintiff's Title VII claims are analyzed under the *McDonnell Douglas* burden-shifting analysis. Defs.' Memo. at p. 12 (citing *McDonnell Douglas*, 411 U.S. at

802). Under this framework, Plaintiff carries the initial burden to demonstrate a *prima facie* case of discrimination, which requires allegations supporting an inference that Plaintiff "(1) belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008). The showing required is a "low threshold." *Id.* at 139. As the court explained in *Holcomb*:

> Direct evidence of discrimination, "a smoking gun," is typically unavailable, and this case is no exception to that pattern. It is well settled, however, that employment discrimination plaintiffs are entitled to rely on circumstantial evidence. In this respect, we have noted the need to be "alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law."

*Id.* at 141 (internal citations and quotations omitted). The allegations in Plaintiff's Complaint easily satisfy this low threshold.

### i.     Plaintiff is a member of a protected class.

Defendants' argument that Plaintiff is not a member of a protected class is offensive and misguided. Plaintiff's race is Caucasian. Compl. ¶ 145. Plaintiff's ethnicity is less clear. Plaintiff identifies as being of "Portuguese descent" or "Hispanic." While the Census Bureau does not list Portuguese as an ethnicity, the United States Department of Transportation and Small Business Administration considers "Portuguese" to be "Hispanic" for purposes of their operation. Further, when filling out the Census Bureau form, it is documented that most persons of Portuguese descent identify themselves as "Hispanic" or "Other". The U.S. Census Bureau defines "Hispanic" as "a person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race." Accordingly, as a person of Portuguese descent, Plaintiff is best

7

categorized as having a Hispanic ethnicity. *See Jana-Rock Constr. Inc. v. New York State Dep't of Econ. Dev.*, 438 F.3d 195, 201 (2d Cir. 2006).

Notwithstanding, Defendants fail to comprehend that Plaintiff's actual race and ethnicity are less important than whether Plaintiff's race and ethnicity are different from Defendants' races and ethnicities. In other words, the fact that Plaintiff's race is Caucasian, and his ethnicity is Hispanic or Portuguese, has no impact on any of his discrimination-based claims as long as Plaintiff was discriminated on account of his race or ethnicity. This Court undertook a thorough and thoughtful analysis of "reverse discrimination" cases in *Barella v. Village of Freeport*, 16 F. Supp. 3d 144 (E.D.N.Y. 2014), and refused to adopt a heightened standard for members of any particular race or ethnicity in Title VII or other discrimination-based cases. Concluding that "this court must assume that *McDonnell* means what it says: a Title VII case is a Title VII case on the 'same terms' for plaintiffs of all races", the court held that a White, Non-Hispanic, American citizen plausibly proved his membership in a protected class. *Id.* at 159-61 (internal quotations and citations omitted). The same is true here.

The Second Circuit affirmed the relevant portions of the District Court's findings in *Village of Freeport v. Barrella*, 814 F.3d 594, 598 (2d Cir. 2016). The Second Circuit undertook a thoughtful and comprehensive analysis into "what does it mean to be Hispanic?" for purposes of Title VII and 42 U.S.C. § 1981 and 1983. In addition to this analysis, the court confirmed the commonsense principle that in discrimination cases, the issue is whether "an employer favored someone outside of the relevant protected class [which] 'will ordinarily suffice' to sustain an inference of discrimination." *Id.* at 601, n. 9 (quoting *Littlejohn*, 795 F.3d at 313).

Here, the "relevant protected class" is the class of 1 created by Plaintiff's race and ethnicity. Plaintiff is Caucasian and Portuguese or Hispanic. By contrast, upon information and belief, every

human Defendant in this case is of West Indian descent. Plaintiff's supervisors were all of West Indian descent, and they targeted Plaintiff because he was not. Compl. ¶ 31, 91, 128. Defendants do not dispute this disparity. Defendants attempt to bury this indisputable fact by calling Plaintiff an "outlier." This is offensive and irrelevant because Defendants made Plaintiff an outlier by treating him differently on account of his race and ethnicity. In sum, the fact that any Defendant took any adverse employment action against Plaintiff on account of his race, ethnicity, national origin or any other protected classification, is sufficient to satisfy this element.

### ii. Plaintiff was qualified for the position he held.

There is virtually no argument from Defendants on this element except for two conclusory sentences wherein Defendants deliberately fail to reference the allegations in the Complaint and instead refer to extraneous documents. Defs.' Memo. at 16-17. These sentences are also Defendants' sole argument in support of the second prong of the *McDonnell Douglas* framework— wherein Defendants must identify "some legitimate, non-discriminatory reason" for their conduct. *McDonnell Douglas*, 411 U.S. at 802. Defendants' failure to disprove that Plaintiff was qualified for his position, and their failure to offer any credible Complaint-based explanation for Plaintiff's termination, is strong evidence that Plaintiff was qualified for his position and that his termination occurred for unlawful, discriminatory reasons.

Elsewhere, Defendants fail to understand the dispositive importance of two critical facts: that in or about March 2017, (a) Plaintiff was issued a firearm and (b) Plaintiff's transfer to West Facility was approved. Compl. ¶ 80-85. As explained in the Complaint, these approvals are not rubber-stamped. They require a comprehensive review of the officer's work and disciplinary history. If there is some outstanding, unresolved disciplinary issue, an officer will not be approved to carry a firearm or for a transfer. Compl. ¶ 80-85. Accordingly, Defendants' approval of

Plaintiff's transfer and request to carry a firearm in March 2017 is conclusive evidence that as of that date, he was considered to be an exemplary, qualified, employee for his position. More importantly, because the two UOFs that were referenced both took place in June 2016, months *prior* to his approval for the firearm and transfer, and Plaintiff's disciplinary history was scrutinized prior to his approval for these requests, there is no conceivable way that these UOFs could subsequently form the basis for his termination. In other words, these UOFs were minor or were already conclusively resolved. If Plaintiff was approved for entitled to voluntary benefits notwithstanding the June 2016 UOFs, it is impossible that the same UOFs could form the basis for the harshest disciplinary action possible—termination. The Complaint explains in even greater detail the inexplicable circumstances of Plaintiff's termination. Compl. ¶ 130-36.

The inconceivable contradiction affirmatively proves that Plaintiff was qualified for his position, and that Defendants' stated reasons for termination for pretextual lies. Plaintiff has satisfied the second element of his discrimination-based claims, and has disproved Defendants' reliance on the second step of the *McDonnell Douglas* framework. In both events, Defendants' motion should be denied.

### iii.       Plaintiff was subject to adverse employment action.

As described above, Defendants do not dispute that Plaintiff's termination (and even Defendants' threats of termination) constitute adverse employment action. Accordingly, Plaintiff has satisfied this element. To the extent that Defendants attempt to isolate each disturbing incident of discrimination, this argument fails for the same reasons described in Section III. Specifically, these incidents, which would likely constitute actionable discrimination on their own, illuminate a pattern of Defendants' discriminatory treatment of Plaintiff culminating in the indisputably actionable adverse employment action of termination.

### iv.        Plaintiff's Complaint pleads an inference of discrimination.

Defendants' main argument is that there is no inference of discrimination without an overt "smoking gun" act of discrimination. As the court explained in *Holcomb*, this is rarely, if ever, possible, and a plaintiff must rely on circumstantial evidence to show discriminatory intent. *Holcomb*, 521 F.3d at 141. The Complaint identifies sufficient circumstantial evidence showing Defendants' discriminatory intent. While many of these incidents also support a finding of unlawful retaliation, Plaintiff has satisfied the "low threshold" required at this stage.

As described above, Plaintiff is Caucasian and of Portuguese descent, which means his ethnicity is either Portuguese or Hispanic. By contrast, all Plaintiff's supervisors, and all Defendants, are of West Indian descent upon information and belief. From the beginning of Plaintiff's employment, he was assigned to the most dangerous, assaultive, difficult posts, without sufficient staffing. Comp. ¶ 64-70, 91. Plaintiff, as the sole Caucasian and person of Portuguese descent in his unit, was denied favorable assignments or promotions, while other individuals of West Indian descent were not. Warden Glenn favored people of West Indian descent, and afforded less- or equally-qualified COs more favorable assignments and treatment if they were of West Indian descent. Compl. ¶ 31, 128, 147. Defendants subjected Plaintiff to an arbitrary system of discipline devoid of due process and in contravention of the DOC's explicit protocols and directives governing UOFs, AOSs, discipline, and disciplinary hearings. Compl. ¶ 46-63, 90-124.

Even the incidents underlying these sham disciplinary procedures is evidence of discrimination. To name just a few: Plaintiff was slashed, spit on, and assaulted to the point of hospitalization more than once as a direct result of his disproportionately high assignments to high-violence sections of the jail. Compl. ¶ 67, 68, 71, 73, 92, 108, 118. While the risk of violence is present for jail workers, Plaintiff was set up by Defendants for violent encounters. This is more

11

than a mere inconvenience or alteration of job responsibilities; this was a calculated attempt by Plaintiff's supervisors to set him up to fail.

Defendants and Warden Glenn further targeted Plaintiff by creating sham disciplinary charges, and pressuring Plaintiff to simply accept the discipline. More than once, Warden Glenn threatened to terminate Plaintiff. Compl. ¶ 107, 125-29. When Plaintiff refused to plead guilty to them, Warden Glenn erupted in anger, threatened Plaintiff, and repeatedly mentioned Plaintiff's race. This was the explicit confirmation of racism that Plaintiff had suspected for months.

Defendants cannot deny these allegations on a motion to dismiss, but their inability to explain their conduct is revealing. The horrors that Plaintiff was subjected to at the direction of Defendants, and his ultimate termination, cannot be justified by any other explanation, as described in Section IV.a.ii above. Given the strong inference of discriminatory intent present in the outrageous conduct of Defendants, Plaintiff has satisfied the low threshold at this stage, and is entitled to seek discovery to substantiate these allegations.

In sum, the Complaint states a claim that Defendants discriminated against Plaintiff on account of his race and ethnicity. Defendants failed to rebut the second prong of the *McDonnell Douglas* framework, and even if they did not, Plaintiff demonstrated that the stated reasons for his termination for pretext and could not possibly be legitimate. Accordingly, Plaintiff's discrimination-based Title VII claim—specifically, Count III—survives Defendant's motion to dismiss.

**b.  Claims based on 42 U.S.C. § 1981, N.Y.C. Admin. Code § 8-107, and N.Y. Exec. Law § 290.**

"Employment discrimination claims brought under the New York Human Rights Law and under Section 1981 are evaluated under the same standards that apply to Title VII cases." *Aspilaire*

*v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 301 (S.D.N.Y. 2009) (citing *Schiano v. Quality Payroll Systems, Inc.*, 445 F. 3d 597, 609 (2d Cir. 2006)). Further, as Defendants acknowledge, claims brought under the New York City Human Rights Law are analyzed under the same general burden-shifting framework, but provide for even broader protections. Accordingly, for the same reasons described in Section IV.a above, Plaintiff's discrimination-based claims in the Complaint—specifically, Count I, V, VI, VII, and VIII—survive Defendants' motion to dismiss.

### c. Plaintiff has stated claims for municipal and individual liability under 42 U.S.C. § 1983.

Defendants' argument in Point III.C confusingly conflates several meritless, tack-on arguments. Defs.' Memo. p. 26-27. For the reasons described in Section IV.a, Plaintiff's Complaint states a claim for discrimination on the basis of race and ethnicity—both of which are protected Constitutional rights. Accordingly, the only question as to municipal liability under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), is whether Defendants' deprivation of Plaintiff's Constitutional rights was caused by an official policy or custom. It was.

An employer may be held liable under 42 U.S.C. § 1983 if it maintains an unconstitutional policy or "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). As with supervisory liability, the unconstitutional practices of correctional supervisors may be attributed to the employer, and thus, form the basis of § 1983 liability, if there is "a finding of either actual or constructive knowledge by the [employer] that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987); *see also Brandon v. City of New York*, 705 F. Supp. 2d 26, 276-77 (S.D.N.Y. 2010).

As described in the Complaint and above, the actions of the individual captain-Defendants were so widespread and rampant that the individual Defendants were actually authorizing prison inmates to put "hits" out on Plaintiff. Worse still, this "practice" was condoned *and executed* by Defendant Glenn—the warden and head policy maker at West Facility. The other individual captain-Defendants had supervisory, decision-making authority over Plaintiff, and used it to institute and perpetuate a system of widespread discrimination and retaliation against Plaintiff— the "outlier" at West Facility.

Further, as discussed above and in the Complaint, all DOC staff were subject to comprehensive directives and regulations governing UOFs, incident-reporting, record-keeping, and disciplinary procedures. Compl. ¶ 46-63. The individual Defendants deliberately disregarded these directives and rules by falsifying or deliberately not reporting UOFs and AOSs. Defendants disregarded the explicit disciplinary procedures protocols by implemented phony disciplinary procedures by (a) failing to give 24 hours notice before a disciplinary hearing, (b) failing to serve CDs within 30 days of an incident, and (c) failing to investigate potential incidents within 15 days of their occurrence.[1] Surely, Defendants' sham revival of previously resolved, years-old disciplinary issues as a pretext for terminating Plaintiff is a similar violation of DOC protocol or due process, or both. Defendants' failure to follow their own explicit and unequivocal guidelines, and their implementation of an arbitrary system towards Plaintiff alone, is strong evidence of an unconstitutional discriminatory custom or policy under *Monell*.

---

[1] Because a motion to dismiss is addressed solely to the allegations in the complaint, and the Complaint sufficiently described the relevant DOC directives and protocols, Plaintiff does not attach the full DOC directives and protocols. These protocols can be supplied upon request.

Defendants also argue in a footnote that the individual Defendants are protected by qualified immunity. Qualified immunity is a fact-intensive inquiry and an affirmative defense that *Defendants* must affirmatively prove—something that Defendants did not even attempt to do in their brief footnote. Considering all inferences must be construed in Plaintiff's favor and against Defendants on this issue, and as discussed above, the right to be free from racial and ethnicity discrimination is a clearly established right, Defendants' argument fails.

In sum, all Plaintiff's discrimination-based claims survive Defendants' motion to dismiss.

## V.     Plaintiff has sufficiently plead his retaliation-based claims.

In contrast to the elusive "smoking gun" of overt discrimination in Plaintiff's discrimination claims, the Complaint is replete with examples of Defendants' wrongful and illegal conduct; (b) Plaintiff's protestation of such conduct; and (c) Defendants' swift, almost instantaneous retaliation against Plaintiff for such protestation. For the reasons that follow, Plaintiff has plead retaliation claims under 42 U.S.C. § 1981, Title VII, and the First Amendment.

### a.   Retaliation under 42 U.S.C. § 1981 and Title VII.

Plaintiff uncovered rampant corruption at Rikers Island, among and between Defendants and inmates. This corruption involved the importation and movement of contraband, exchange of sexual favors, death threats and violence. Each time Plaintiff brought such corruption to the attention of his supervisors, he was suppressed and then retaliated against with pretextual disciplinary matters, inmate violence, and his eventual termination. Plaintiff's disturbing allegations of retaliation survive Defendants' motion to dismiss.

Retaliation claims under Title VII and § 1981 are evaluated under the same three-step *McDonnell Douglas* burden-shifting framework. *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). Plaintiff must establish a *prima facie* case of retaliation by alleging "(1) participation in a

protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; (4) a causal connection between the protected activity and the adverse employment action." *Id.* Even at the summary judgment stage, Plaintiff's burden is "*de minimis.*" *Id.* "Proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id.* at 170. Further, "To prove that he engaged in protected activity, the plaintiff need not establish that the conduct he opposed was in fact a violation of Title VII. However, the plaintiff must demonstrate a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (internal quotations and citations omitted).

Plaintiff indisputably suffered an adverse employment action by being terminated. The incidents referenced in the Complaint leading up to the termination, which would likely stand as adverse employment actions on their own, are strong evidence of Defendants' unlawful retaliation. Further, the wrongful and unlawful conduct that Plaintiff uncovered, illuminated, and spoke out against—for which Plaintiff was retaliated against—was obviously known by Defendants because (a) it involved and was orchestrated by Defendants; and (b) Plaintiff brought such conduct to Defendants' attention. In other words, Defendants had every opportunity to not engage in such unlawful conduct, but they chose to do so anyway. Defendants cannot now claim they did not know their conduct was unlawful.

Despite the indisputable seriousness of Defendants' wrongdoing, Defendants claim that Plaintiff did not protest any "protected activity." This belies common sense. Defendants asked

16

Plaintiff to commit perjury. Defendants refused to follow directives and protocols regarding the accurate recording of UOFs and AOSs and other incidents involving officers. Defendants falsified records. Defendants neglected every conceivable duty they had towards Plaintiff by exposing him to violent assignments that were deliberately understaffed, and by condoning or outright ordering inmates to attack Plaintiff. Defendants refused to follow directives and protocols related to discipline and investigation of UOFs and AOSs. Defendants denied Plaintiff any semblance of due process by creating sham hearings related to sham violations. Defendants violated state and federal laws regarding access to drugs generally, and by providing drugs, weapons and other contraband to inmates, often in exchange for "favors." This list merely scratches the surface of Defendants' conduct, against which Plaintiff spoke up. Compl. ¶ 90-129.

And each time Plaintiff spoke up, Defendants retaliated against him. After Plaintiff refused to commit perjury on Captain Rupnarain's behalf, he was promptly served with a CD for two sham UOFs within weeks. Compl. ¶ 95-97. Shortly after Plaintiff reported Captain Richards' disturbing "twerking" incident, and around the time he reported his supervisory captains' planting of contraband on inmates, he was served by Captain Richards with a CD and investigated for his use of previously-approved boots. Compl. ¶ 99-103. When Plaintiff reported a minor UOF involving Inmate Cooper, Captain Oudekerk denied receiving any such notice of the UOF, falsely rewrote the incident report, and retaliated against Plaintiff by serving him with a CD. Then, Warden Glenn threatened Plaintiff with termination if he continued to accurately report UOFs. Like most matters, this was not properly investigated within 15 days as required by DOC protocols. Compl. ¶ 107. Shortly after Plaintiff was hospitalized after being hit by an inmate, Plaintiff discovered that Warden Glenn condoned a "hit" on him. That same day, he was served with a notice to appear before a hearing regarding an incident from nearly a year ago. Compl. ¶ 108-09.

Plaintiff continued to be assaulted and attacked throughout September 2017 because he followed DOC protocols regarding contraband and drugs. An inmate put another "hit" out on Plaintiff for this reason. Warden Glenn and the other Defendant-captains condoned the attacks. When Plaintiff reported these attacks on the "24-hour reports", some of his reports disappeared. All throughout this time, Defendants instructed Plaintiff to "hold it down." Plaintiff refused to be suppressed, and he was promptly served with three CDs in September 2017. Because these CDs were illegitimate to begin with, they were ultimately dismissed. Compl. ¶ 116-20. Shortly thereafter, Plaintiff reported another slashing incident. When ordered to explain the recent spate of attacks, Plaintiff was set-up and written up by Captain Carter for allegedly abandoning his post. Compl. ¶ 121-24. Finally, Plaintiff filed a complaint with the City's Equal Employment Opportunity, of which Warden Glenn was notified, and shortly thereafter, Plaintiff was terminated. Compl. ¶ 137-38.

The cause-and-effect of these incidents and discipline is inescapable. Plaintiff did his job and reported UOFs or he acted as a whistleblower by exposing the widespread corruption; and within days, he was served with phony disciplinary complaints. Though these disciplinary complaints rarely amounted to anything because they were illegitimate, they reveal Defendants' undeniable retaliation against Plaintiff. Accordingly, Plaintiff has satisfied his low burden at this stage with a multitude of incidents of (a) Defendants' illegal conduct; (b) Plaintiff's protestation of such illegal conduct; and (c) Defendants' retaliation against Plaintiff for such protestation nearly immediately. Defendants' motion to dismiss should be denied.

**b. Retaliation under the First Amendment.**

Plaintiff's retaliation claims under the First Amendment are based on the exact set same of facts as described above, but simply state a different legal theory. Because Plaintiff's Title VII and

§ 1981 retaliation claims survive Defendants' motion to dismiss, so too should Plaintiff's First Amendment claim. Accordingly, Plaintiff shall not revisit all the above examples of retaliation, but shall address only the unique elements of Plaintiff's First Amendment claim.

As a threshold matter, Defendants' motion to dismiss is premature because there has not been any discovery in this matter to support Defendants' claims that Plaintiff spoke as a public employee rather than a citizen and his speech was not about a matter of public concern. The Second Circuit resolved this issue in *Matthews v. City of New York*, 488 F App'x 532 (2d Cir. 2012), holding that the record was not sufficiently developed to decide this question. Most of the cases relied on by Defendants, including *Garcetti v. Ceballos*, 547 U.S. 410 (2006) and *Weintraub v. Board of Education*, 593 F.3d 196 (2d Cir. 2010), were decided on a complete record on a motion for summary judgment.

A public employee asserting a First Amendment retaliation claim under § 1983 must allege that (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech. *See, e.g.*, *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). Because it is undisputed that Defendants took an adverse action against Plaintiff, the only question is whether Plaintiff's speech was protected "public speech", i.e., whether Plaintiff pleaded that (1) his speech was a matter of public concern and (2) he spoke "as a citizen" rather than solely as an employee. *See*, *Garcetti*, 547 U.S. at 420-22, 424. Because, as described above in Section IV.a.ii, Defendants failed to offer any legitimate reason for their termination of Plaintiff, the only conceivable conclusion is that the termination was based on unlawful reasons—i.e., discrimination and retaliation.

The Complaint establishes *prima facie* evidence that Plaintiff's speech involved a matter of public concern. Speech will be considered to relate to a matter of public concern if it can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). Certainly the integrity of the corrections system is a matter of public concern. Certainly the influx and distribution of contraband and drugs to and between correctional staff and inmates is a matter of public concern. Certainly, widespread violence between inmates and prison staff condoned and ordered by supervisory prison staff, including the warden, is a matter of public concern. Corruption in a prison is absolutely a matter of public concern, especially at a facility like Rikers Island which is funded by public taxpayer dollars. In essence, the public pays the salaries of Defendants who used their time at work to engage in widespread corruption.

Even if Plaintiff's speech also addressed how such conduct affected him personally, viewing the allegations in the light most favorable to the plaintiff, it is apparent that his speech was not limited to personal grievances and did address "a matter of public concern." *See, e.g.*, *Reuland v. Hynes*, 460 F.3d 409 (2d Cir. 2006). Defendants' arguments to the contrary are meritless.

Plaintiff spoke as a citizen, not as an employee. The Second Circuit has stated, "[g]uided by the Supreme Court's decision in *Garcetti*, we ask two questions to determine whether a public employee speaks as a citizen: (A) did the speech fall outside of the employee's 'official responsibilities,' and (B) does a civilian analogue exist?" *Matthews v. City of New York*, 779 F.3d 167, 173 (2d Cir. 2015) *(citing Weintraub v. Bd. of Educ. of City Sch. Distr. of City of. N.Y.*, 593 F.3d 196, 203-04 (2d Cir. 2010)). Plaintiff's reporting of rampant corruption and fraud was not part of his job description. Plaintiff was a corrections officer, and in no way did his job functions

20

include illuminating and exposing widespread corruption at Rikers Island. Plaintiff was not a supervisor and was not explicitly tasked with ensuring that reports that were supposed to be recorded and filed were not destroyed. Plaintiff went beyond his job description, at serious risk to his job and life, to bring these issues to the public eye. Each and every time he did, he was retaliated against.

Plaintiff's speech also had a civilian analogue. Inmates could make complaints in a similar forum that Plaintiff could. Plaintiff went outside his immediate command chain to expose the wrongdoing of his immediate supervisors. And Plaintiff ultimately filed a charge through civilian channels—specifically, the New York State Department of Human Rights, the EEO, and the EEOC. Accordingly, Plaintiff's speech is protected by the First Amendment, and Defendants' retaliation against Plaintiff for his efforts to expose rampant corruption to the public eye should not be suppressed again.

For these reasons, and for the reasons described in Section V.a above, Plaintiff has stated a claim for First Amendment retaliation at this stage of the proceedings. Plaintiff is entitled to seek discovery to substantiate the disturbing allegations in the Complaint. Because Defendants have done nothing to offer any conceivable alternative reason for Plaintiff's termination, and Plaintiff has satisfied his *prima facie* burden, Defendants' motion to dismiss should be denied.

## VI.    Plaintiff has sufficiently plead his other claims.

Plaintiff's other claims based on a hostile work environment, harassment, and wrongful termination all stem from the same discriminatory and retaliatory conduct that underlie Plaintiff's other claims. For example, the Complaint sufficiently pleads that Plaintiff's employment was "so severely permeated with discriminatory intimidation, ridicule and insult that the terms of [his] employment were thereby altered." *Alexander v. City of N.Y.*, 957 F. Supp. 2d 239, 250 (E.D.N.Y.

2013). Months of targeted assignments that were unfair and unsafe, unlawful demands, arbitrary discipline as a result of Plaintiff's refusal to be complicit in Defendants' wrongdoing, and violence ordered by the individual Defendants satisfies the standards required by these claims.

Finally, Plaintiff sincerely doubts that there is an explicit, written conspiracy agreement between the Defendants. However, at this stage, based on the allegations of the Complaint taken as a whole and with all inferences construed in favor of Plaintiff, Plaintiff has alleged the concerted cooperation between the individual Defendants to discriminate against Plaintiff and retaliate against Plaintiff for his exposure of rampant corruption at Rikers Island. It is hard to come to any other conclusion when all human Defendants worked together to "hold it down" and to ensure that Plaintiff was punished for refusing to do so.

## CONCLUSION

Plaintiff's Complaint does not lack specificity, or the names of Defendants, or the time and date of certain events, or any other hallmark of a well-plead informative complaint. The Complaint is remarkable in its first-hand detail, in the shocking conduct it exposes, and in the powerful evidence of proximate causation—i.e., the identification of Defendants' unlawful conduct and the swift retaliation against Plaintiff. Plaintiff's burden at this stage is far less, and Defendants have done nothing to explain away the seriousness of Plaintiff's allegations or to offer an alternative explanation for terminating Plaintiff. This is shocking because the two stated reasons for Plaintiff's termination are conclusively established as illegitimate.

In sum, Plaintiff has brought corruption to the public eye at the expense of his job and his safety. Plaintiff (on behalf of himself and on behalf of society) has every right to seek discovery on these issues and identify the full extent of Defendants' wrongdoing. For these reasons, Defendants' motion to dismiss should be denied in its entirety, and discovery should proceed.

Dated: October 15, 2019                          Respectfully Submitted,

                                                 /s/ Uri Nazryan
                                                 Uri Nazryan
                                                 2004 Ralph Avenue
                                                 Brooklyn, New York 11234
                                                 P: (718) 531-9700
                                                 unazryan@heldhines.com
                                                 *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2019, I filed the foregoing using the Court's electronic

case filing system, which generated a notice of electronic filing to all counsel of record.

                                                 /s/ Uri Nazryan
                                                 Uri Nazryan

23