Case No. 19-cv-6629 (CM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MANUEL CARVALHO CALVELOS,

            Plaintiff,

-against-

CITY OF NEW YORK, NADENE PINNOCK, ANTONIO CRUZ, ANGEL VILLALONA, CLEMENT GLENN, DENISE PHILLIPS, MARY RICHARDS, VAUGHN GRINNAGE, QUINCY OUDEKERK, WILLA VERABAL, SURUJDYAL RUPNARAIN, DESHANDA CARTER,

            Defendants.

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT CARTER'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**JAMES E. JOHNSON**
*Corporation Counsel of the City of New York*
Attorney for Defendant
100 Church Street, Room 2-172
New York, New York 10007-2601

*Of Counsel:* Amanda M. Blair

*Tel.:* (212) 356-8767

Matter No.:   2019-050157

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT.....................................................................................................................2

    POINT I ..........................................................................................................2

        DISCOVERY SHOULD BE STAYED PENDING
        THE RESOLUTION OF DEFENDANTS'
        MOTION TO DISMISS. .............................................................................2

    POINT II .........................................................................................................2

        PLAINTIFF'S TITLE VII CLAIMS ARE
        BARRED TO THE EXTENT THAT THEY ARE
        BASED ON EVENTS PRIOR TO AUGUST 15,
        2017. ..........................................................................................................2

    POINT III ........................................................................................................3

        PLAINTIFF'S COMPLAINT FAILS TO STATE A
        CAUSE OF ACTION AND SHOULD BE
        DISMISSED. .............................................................................................3

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Alfano v. Costello,
 294 F.3d 365 (2d Cir. 2002) ..................................................................................................6

Anderson v. Nassau Cty. Dep't of Corr.,
 558 F. Supp. 2d 283 (E.D.N.Y. 2008) ................................................................................2, 3

Anemone v Metro. Transp. Auth.,
 629 F3d 97 (2d Cir. 2011) ......................................................................................................7

Biswas v. City of N.Y.,
 973 F. Supp. 2d 504 (S.D.N.Y. 2013) ..................................................................................10

DiFolco v. MSNBC Cable L.L.C.,
 622 F.3d 104 (2d Cir. 2010) ..................................................................................................4

Dressler v. City Sch. Dist. of N.Y.,
 No. 15-3696 (JPO), 2016 U.S. Dist. LEXIS 107753 (S.D.N.Y. Aug. 15, 2016) ....................6

Flynn v NY State Dept. of Corr. & Community Supervision,
 No. 17-2864 (VB), 2018 U.S. Dist. LEXIS 72277 (S.D.N.Y. 2018) .....................................8

Ford v. Bernard Fineson Dev. Ctr.,
 81 F.3d 304 (2d Cir. 1996) .....................................................................................................3

Gaffney v. Mamaroneck Police Dep't,
 No. 15-5290 (CS), 2016 U.S. Dist. LEXIS 117533 (S.D.N.Y Aug. 31, 2016) ......................3

Green v. Maraio,
 722 F.2d 1013 (2d Cir. 1983) .................................................................................................9

Grillo v. N.Y. City Transit Auth.,
 291 F.3d 231 (2d Cir. 2002) ...................................................................................................7

Harlow v. Fitzgerald,
 457 U.S. 800 (1982) ................................................................................................................9

Henry v. NYC Health & Hosp. Corp.,
 18 F. Supp. 3d 396 (S.D.N.Y. 2014) ......................................................................................5

Jackler v. Byrne,
 658 F.3d 225 (2d Cir. 2011) ...................................................................................................8

Littlejohn v. City of N.Y.,
  795 F.3d 297 (2d Cir. 2015) ................................................................................................5

Lopez v. City of N.Y.,
  No. 14-3285 (NGG), 2016 U.S. Dist. LEXIS 72145 (E.D.N.Y. May 31, 2016) ...................6

Oteri-Harkins v. City of N.Y.,
  No. 97-2309 (JG), 1998 U.S. Dist. LEXIS 21876 (E.D.N.Y 1998) ................................2, 3

Predun v. Shoreham-Wading River Sch. Dist.,
  489 F. Supp. 2d 223 (E.D.N.Y. 2007) ..................................................................................3

Reyes v. Fairfield Props.,
  661 F. Supp. 2d 249 (E.D.N.Y. 2009) ..................................................................................4

Saulpaugh v. Monroe Community Hosp.,
  4 F.3d 134 (2d Cir. 1993) .....................................................................................................8

Sunshine v. Long Island Univ.,
  862 F. Supp. 26 (E.D.N.Y. 1994) .........................................................................................3

Webb v. Goord,
  340 F.3d 105 (2d Cir. 2003) ...............................................................................................10

Weintraub v Bd. of Educ.,
  593 F3d 196 (2d Cir. 2010) ..................................................................................................7

Wood v. Town of E. Hampton,
  No. 08-4197 (DRH), 2010 U.S. Dist. LEXIS 104806 (E.D.N.Y. Sep. 30,
  2010) .....................................................................................................................................9

**Statutes**

§ 1981 .................................................................................................................................1, 8, 9

§ 1983 ........................................................................................................................................1, 8

§ 1985 .................................................................................................................................1, 9, 10

Title VII ..............................................................................................................................1, 2, 3, 6

**Other Authorities**

First Amendment .....................................................................................................................1, 7, 8

## PRELIMINARY STATEMENT

Plaintiff Manuel Carvalho Calvelos ("Plaintiff"), who was terminated from his probationary employment with the New York City Department of Correction ("DOC") on January 5, 2018, brings claims of discrimination based on race (Caucasian) and ethnicity or national origin (Portuguese and/or Hispanic), as well as retaliation, a hostile work environment, and conspiracy pursuant to Title VII, § 1981, § 1983, § 1985, the First Amendment, and State and City HRLs. Defendant Carter moves to dismiss the Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) on the grounds that certain of Plaintiff's allegations are time-barred, and the Complaint otherwise fails to state a plausible claim upon which relief can be granted.

In opposition, Plaintiff maintains that he was subjected to discrimination and retaliation because he exposed corruption at West Facility and was an "outlier" from the individual Defendants who were all, allegedly, of West Indian descent and/or, as Plaintiff contends for the first time, Black and/or African-American. Regardless, Plaintiff has not alleged facts sufficient to impute individual liability upon Defendant Carter under §§ 1981 or 1983, and Defendant Carter cannot be sued in her individual capacity under Title VII. Furthermore, Defendant Carter's single interaction with Plaintiff, which, as Plaintiff admits, did not involve any acts (or even indication) of discriminatory conduct or animus, is insufficient to show race or national origin discrimination. Accordingly, as Plaintiff has failed to allege facts showing that Defendant Carter engaged in any discrimination against Plaintiff, his claims against Defendant Carter should be dismissed.

## ARGUMENT

### POINT I

**DISCOVERY SHOULD BE STAYED PENDING THE RESOLUTION OF DEFENDANTS' MOTION TO DISMISS.**

Defendant Carter agrees that discovery has in effect been stayed pending the resolution of Defendants' motions to dismiss. Accordingly, this argument is moot.

### POINT II

**PLAINTIFF'S TITLE VII CLAIMS ARE BARRED TO THE EXTENT THAT THEY ARE BASED ON EVENTS PRIOR TO AUGUST 15, 2017.**

Plaintiff concedes that he is not asserting any allegations of discrimination against Defendant Carter prior to August 15, 2017; accordingly, all Title VII claims prior to said date are time-barred. See Pl.'s Opp'n, at 7. Further, and despite Plaintiff's late advancement of a continuing violation exception, his Title VII claims accruing before August 15, 2017, are time-barred and must be dismissed. The continuing violation exception "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." Anderson v. Nassau Cty. Dep't of Corr., 558 F. Supp. 2d 283, 297 (E.D.N.Y. 2008) (quoting Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d. Cir. 1998)). The Second Circuit has narrowly defined what constitutes an "ongoing policy". See Oteri-Harkins v. City of N.Y., No. 97-2309 (JG), 1998 U.S. Dist. LEXIS 21876, at *11 (E.D.N.Y 1998). This exception—which is disfavored in the Second Circuit—requires a showing of compelling circumstances. See Predun v. Shoreham-Wading River Sch. Dist., 489 F. Supp. 2d 223, 228 (E.D.N.Y. 2007). The incidents "must not be

isolated and sporadic outbreaks of discrimination, but a dogged pattern." Sunshine v. Long Island Univ., 862 F. Supp. 26, 29 (E.D.N.Y. 1994)).

Here, Plaintiff's allegations of incidents occurring before August 15, 2017, consist of discrete, isolated acts, such as assignments or disciplinary action, that plainly are not subject to the continuing violation doctrine. See Anderson, 558 F. Supp. 2d at 297. While Plaintiff takes pains to argue that the conduct "grew in scope, brazenness, and regularity", Plaintiff fails to provide support for, let alone allege, the "existence of any discriminatory policy or mechanism" to adequately plead a continuing violation. See Gaffney v. Mamaroneck Police Dep't, No. 15-5290 (CS), 2016 U.S. Dist. LEXIS 117533, at *16 (S.D.N.Y Aug. 31, 2016). Finally, Plaintiff's claim that Defendants' actions constitute a continuing violation ultimately fails because he has not alleged that he invoked the "continuing violation" exception in his EEOC charge. See Oteri-Harkins, 1998 U.S. Dist. LEXIS 21876, at *12-13. Consequently, for all discrete discriminatory acts allegedly occurring before August 15, 2017, Plaintiff's Title VII claims are time-barred and must be dismissed. See Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 307 (2d Cir. 1996).

## POINT III

### PLAINTIFF'S COMPLAINT FAILS TO STATE A CAUSE OF ACTION AND SHOULD BE DISMISSED.

A. **Title VII and State HRL Race and National Origin Discrimination, Retaliation, and a Hostile Work Environment Claims**

(a) Race and National Origin Discrimination

Preliminarily, the Court should not strike or disregard the exhibits attached to Defendants' motion to dismiss. "It is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as

3

well as documents filed in other courts and other public records." See Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009). Here, except for the Complaint filed in this action, all of the exhibits attached to the motion to dismiss are within the public record, having been submitted – indisputably – to the state court for his Article 78 proceeding, and predominantly by Plaintiff. Such documents plainly may be considered here. See id. Furthermore, courts routinely accept documents incorporated by reference in a complaint for consideration on a motion to dismiss challenging the sufficiency of a pleading. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Indeed, within his Complaint itself, Plaintiff directly references Exhibit "B" and Exhibits "E" through "I". See id.; see also Pl.'s Compl., Ex. "A," at ¶¶ 47-50, 102, 118, 119, 122, 131. It is astonishing that Plaintiff would consider Defendant Carter's reference to these documents "unfair" and claim the documents are inauthentic when Plaintiff relied upon these same documents in support of his Article 78 proceeding against DOC and the City of New York.

In addition, all Title VII allegations against Defendant Carter, and all individually-named Defendants, should be dismissed as Title VII does not permit the imposition of liability on individuals in their individual capacities. See Mtshali v. N.Y.C. Coll. of Tech., No. 05-358, 2006 U.S. Dist. LEXIS 72706, at *5-6 (S.D.N.Y. Oct. 3, 2006).

As to the merits, Plaintiff confusingly lambasts Defendant Carter for her recitation of Plaintiff's characterization of himself as an outlier within his complaint. See Pl.'s Opp'n, at 9; see also Pl.'s Compl., Ex. "A," at ¶ 31 ("Defendants discriminated, and conspired to discriminate, against Plaintiff on the basis of his race, ethnicity, and national origin because he was an outlier at West Facility." ). Regardless, Plaintiff has alleged no facts showing that he suffered a "palpable" and "thick" environment of race or national origin discrimination. See Pl.'s

4

Opp'n, at 9. Relying instead, on one alleged incident in which Warden Glenn allegedly called out *Plaintiff* for being racist. See Pl.'s Opp'n, at 9; see also Pl.'s Compl., Ex. "A," at ¶ 127.

Plaintiff spends inordinate time asserting (and defending) his protected classes. Defendants did not, however, contend that Plaintiff cannot assert a discrimination claim based on his race, identified as Caucasian. Plaintiff argues that it does not matter what his race and ethnicity are as long as his race and ethnicity is "different from the race and ethnicity of the individual Defendants." See Pl.'s Opp'n, at 10. What Plaintiff fails to comprehend, however, is that in his complaint, he failed to identify the race or ethnicity of Defendant Carter. People of West Indian descent are not uniformly black, and certainly are not African-American, a term unique to the United States, as Plaintiff seemingly means to contend. See Plaintiff's Memorandum of Law in Opposition to Defendant Deshanda Carter's Motion to Dismiss the Complaint ("Pl.'s Opp'n"), at 9. Furthermore, Plaintiff provides no support for his surprising argument that "[e]ven if Defendants and Plaintiff were the same race and ethnicity, Defendants' conduct would still constitute discrimination." See Pl.'s Opp'n, at 11. That is simply untrue as a matter of law and ordinary reason. Regardless, Plaintiff notably and for the first time, in opposition to Defendant Carter's motion to dismiss, identifies the individually-named Defendants as Black or African-American.[1] See Pl.'s Opp'n, at 9.

In accordance with the McDonnell Douglas burden-shifting framework, Plaintiff argues that he was qualified for his position as a Corrections Officer (a point not presently challenged), and argues that Carter "set [him] up by writing him up and issuing him a CD", an action which allegedly constituted an adverse employment action. See Pl.'s Opp'n, at 13.

---

[1] Plaintiff cites paragraphs 31, 91, and 128 of his complaint to support his allegation. See Pl.'s Opp'n at 11. None of those paragraphs, however, mention the race or ethnicity of the individually-named defendants, identifying the defendants only as of West Indian descent.

5

Plaintiff does not allege any facts showing that the command discipline altered the terms and conditions of his employment. See Carmellino v. Dist. 20 of the N.Y.C. Dep't of Educ., 03-5942, 2006 U.S. Dist. LEXIS 63705, at *157-58 (S.D.N.Y. Sep. 6, 2006) ("[t]he initiation of disciplinary proceedings alone does not constitute an adverse employment action if it has not resulted in any materially adverse change in the terms or conditions of employment.") (internal quotations omitted). In fact, Plaintiff admits that the command discipline was, for whatever unspecified reason, ultimately dismissed. See Pl.'s Opp'n, at 14. Plaintiff then proceeds to argue that the command discipline from Carter constituted a "ratification" of the alleged misconduct he had previously suffered. See Pl.'s Opp'n, at 14. Notably, Plaintiff does not allege any facts, in his complaint or opposition, showing any relationship between Carter and Warden Glenn, or any of the other individually-named defendants. In fact, Carter, despite being an alleged "ring-leader" for this action, was merely mentioned in two paragraphs (one which only identifies her and her job title) in the entirety of Plaintiff's 188 paragraph-long complaint. See Pl.'s Compl., Ex "A." Finally, and contrary to Plaintiff's contentions, the factual allegations pleaded fail to set forth any inference of discrimination by Defendant Carter due to Plaintiff's race or national origin. See Littlejohn v. City of N.Y., 795 F.3d 297, 312 (2d Cir. 2015). As Plaintiff does not allege any facts to plausibly support his claim that he was discriminated against because of his race and national origin, his claims must be dismissed.

(b) Retaliation

In opposition, Plaintiff provides a list of what he alleges to be adverse actions and conduct that Defendants took against him in support of his retaliation claim. See Pl.'s Opp'n, at 20. Notably, Plaintiff does not allege that those actions were discriminatory in nature or that he complained or "spoke up" about them. See id. Since Plaintiff fails to assert facts showing that his

command discipline for abandoning his post was in retaliation for complaints of discrimination he had not yet made, his allegation must be dismissed. See McIntosh v. United States, No. 14-7889, 2016 U.S. Dist. LEXIS 44290, at *93 (S.D.N.Y. Mar. 31, 2016) ("where the allegedly adverse action occurs *before* the allegedly protected activity, a court may appropriately decline to find a causal connection")) (emphasis in original).

### (a) Hostile Work Environment

In order to state a cause of action for hostile work environment a Plaintiff must allege that he was subject to a hostile work environment because of the employee's membership in a protected class. See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (Title VII and State HRL). Once again, Plaintiff fails to allege comments or behaviors (or any other conduct) that could give way to an inference that he was subject to a hostile work environment because of his purported protected classes. See Grillo v. N.Y. City Transit Auth., 291 F.3d 231, 235 (2d Cir. 2002) ("Even if [plaintiff's] highly dubious claim that he was unfairly singled out for punishment by the instructors is credited, [plaintiff] has done little more than cite to his alleged mistreatment and ask the court to conclude that it must have been related to his race.") Here, Plaintiff does not allege any facts showing that Defendant Carter issued Plaintiff a command discipline because he is Caucasian and Portuguese and/or Hispanic; therefore, his hostile work environment claim should be dismissed.

### B.     First Amendment Retaliation

In opposition, Plaintiff argues that the record has not been sufficiently developed to decide the question of whether Plaintiff spoke as a public employee rather than a citizen. See Pl.'s Opp. at 19. First, it is well-established that "speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job

7

description, or in response to a request by the employer." See Weintraub v Bd. of Educ., 593 F3d 196, 203 (2d Cir. 2010). Indeed, when an employee's speech is "part-and-parcel" of the employee's job duties, such speech is not protected by the First Amendment. See Anemone v Metro. Transp. Auth., 629 F3d 97, 117 (2d Cir. 2011). Here, throughout the Complaint, Plaintiff acknowledges that exposing corruption was part-and-parcel of his job duties as a Correction Officer. See Pl.'s Compl. at ¶¶ 47-48, 105, 121-123.

Second, Plaintiff offers no support that inmates could make complaints in a similar forum as Plaintiff, and even assuming, arguendo, that inmates could, such action does not transform DOC into an "'independent state agency' responsible for entertaining complaints by 'any citizen in a democratic society regardless of his status as a public employee.'" Jackler v. Byrne, 658 F.3d 225, 241 (2d Cir. 2011). Rather, it merely means that they are responsible for entertaining complaints from an additional subset of the population other than employees. See id. Plaintiff's argument that he made complaints outside of his chain of command is similarly unavailing. See Flynn v NY State Dept. of Corr. & Community Supervision, No. 17-2864 (VB), 2018 U.S. Dist. LEXIS 72277 at *15-16 (S.D.N.Y. 2018) (claim dismissed where communication was not made to an official who entertains complaints from private citizens).

Finally, Plaintiff's argument that his speech is protected because he filed a charge through civilian channels is both disingenuous and lacking in merit. See Plaintiff's Opp. at 21. First, Plaintiff filed a charge with the SDHR (which was ultimately forwarded to the EEOC), on June 11, 2018, months after his January 5, 2018 termination date. See Pl.'s Compl., Ex. "A," at ¶¶ 22, 139. Furthermore, as Plaintiff himself notes, his complaint with EEO was against Warden Glenn was for racial discrimination; there is no mention of a complaint with EEO concerning corruption. See id. ¶ 137 ("Plaintiff filed a Complaint with the City's Office of Equal

8

Employment Opportunity ("EEO") against Warden Glenn for <u>racial discrimination</u>") (emphasis added). Further, Plaintiff's EEO complaint alleging racial discrimination is not protected under the First Amendment as the complaint does not implicate a matter of public concern. See Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143 (2d Cir. 1993). As such, since Plaintiff clearly spoke as a public employee rather than a citizen, his First Amendment claims must be dismissed.

**C.      Sections 1981 and 1983 Claims**

In opposition, Plaintiff fails to allege individual liability against Defendant Carter; therefore, his claims must be dismissed. In order to impute individual liability, Plaintiff must show that Defendant Carter was personally involved in unlawful activity. See Wellington v. Spencer-Edwards, No. 16-6238, 2017 U.S. Dist. LEXIS 162788, at *13 (S.D.N.Y. Sep. 28, 2017). As explained, Plaintiff has not advanced any allegations showing that Defendant Carter, in the one instance in which they interacted, discriminated against Plaintiff because of his race and national origin. See id. at *13-14 ("plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation.") (internal quotations omitted). Accordingly, Plaintiff's §§ 1981 and 1983 claims against Defendant Carter should be dismissed. Furthermore, qualified immunity applies where, as here, the conduct of the individual defendant, as alleged by Plaintiff, "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Green v. Maraio, 722 F.2d 1013, 1019 (2d Cir. 1983). Accordingly, Plaintiff's §§ 1981 and 1983 claims should be dismissed.


### D. Section 1985(3) Conspiracy Claim

Defendant does not allege any facts showing any interaction between Defendant Carter and the other individually-named Defendants to support his conspiracy claim. Rather, Plaintiff's argument wholly, and callously, relies on his information and belief that Defendant Carter is Black and/or African-American and/or West Indian and therefore had a "tacit understanding" to conspire against Plaintiff simply because he is Caucasian and Portuguese and/or Hispanic. See Pl.'s Opp'n, at 9, 25. Such baseless allegations are insufficient to support his claim that Defendant Carter engaged in any conspiracy, and therefore his § 1985(3) claim against Defendant Carter must be dismissed. See Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003).

### E. City HRL Discrimination, Retaliation, and a Hostile Work Environment Claims

In opposition, Plaintiff does not address Defendant Carter's City HRL arguments. Accordingly, Defendant Carter respectfully refers the Court to arguments made in Defendant Carter's Original Memorandum that justify dismissal of these claims.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the opening memorandum, Defendant Carter respectfully request that the Court grant her motion to dismiss the Complaint in its entirety, that the relief requested therein be denied in all respects, that judgment be entered for Defendant Carter, and that the Defendant Carter be granted costs, fees, and disbursements together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
November 22, 2019

                              **JAMES E. JOHNSON**
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendant
                              100 Church Street, Room 2-172
                              New York, New York 10007
                              (212) 356-8767
                              ablair@law.nyc.gov

By: _/s/ Amanda B._____
              Amanda M. Blair
              Assistant Corporation Counsel

**MAXWELL D. LEIGHTON**
**AMANDA M. BLAIR**
**M. ADIL YAQOOB**
  Of Counsel

11